ORDERED UNSEALED on 09/11/2026 s/ melodyqu
SEALED

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>CEZAR YAQOOB,<br>Defendant. | Case No.: 26mj5215<br>**COMPLAINT FOR VIOLATION OF**<br>Title 18, U.S.C., Sec. 1343 - Wire Fraud; Title 18, U.S.C., Secs. 981(a)(1)(C), 982(a)(2) and Title 28, U.S.C., Sec. 2461(c) and Title 21, U.S.C., Sec. 853 - Criminal Forfeiture<br>**[UNDER SEAL]** |

The undersigned complainant being duly sworn states:

At all times relevant to this Complaint:

**INTRODUCTION**

1. The United States Department of Health and Human Services ("HHS") provided federal funding to states, including the State of California, to help low-income families pay for childcare expenses.

2. In California, four programs provided subsidies to childcare providers servicing income-eligible families: CalWORKs Stage 1, CalWORKs Stage 2 Alternative Payment ("C2AP"), CalWORKs Stage 3 Alternative Payment ("C3AP"), and California Alternative Payment Program ("CAPP").

3. In the Southern District of California, the County of San Diego administered "Stage 1" subsidies, and two community organizations, Child Development Associates ("CDA") and the Young Men's Christian

Association ("YMCA"), administered subsidies through the C2AP, C3AP, and CAPP.

4. Generally, if CDA or YMCA determined that a family was eligible to receive subsidized childcare services and the family's selected childcare provider (i) registered with CDA or YMCA, (ii) had an active license to provide care at an approved facility from the State of California Department of Social Services ("CDSS"), and (iii) submitted monthly attendance records documenting the childcare they provided, CDA and YMCA paid subsidies directly to the childcare provider, via check or direct deposit, for providing childcare to registered income-eligible families.

5. Monthly attendance record forms had "self-certification" and signature sections for both the childcare provider and the parent, both of which began, "I declare under penalty of perjury that the information provided on this attendance record is true and correct[.]" Without a completed and signed attendance record, CDA and YMCA did not issue payment to registered childcare providers.

6. CDA and YMCA used a third-party software company to transmit blank monthly attendance records forms to childcare providers. The attendance record forms included the childcare provider's name, the child's name, the parent's name, and a table for entering the child's "Time In" and "Time Out" on each day of the month.

7. Childcare providers could submit completed attendance record forms to CDA and YMCA in-person, via mail, or through a software application. All submissions resulted in a copy of the completed attendance record being transmitted, over interstate wire communications, to the third-party software company's servers in Oregon.

///

8. California regulations stated in part, "The licensee shall be present in the home and shall ensure that children in care are supervised at all times. When circumstances require the licensee to be temporarily absent from the home, the licensee shall arrange for a substitute adult to care for and supervise the children during his/her absence. Temporary absences shall not exceed 20 percent of the hours that the facility is providing care per day." Cal. Code Regs. Tit. 22, § 102417(a).

9. Defendant CEZAR YAQOOB, a resident of the Southern District of California, operated "YAQOOB, CEZAR FAMILY CHILD CARE" at an address on Rathmoor Street in El Cajon, California, within the Southern District of California. The license, effective August 12, 2021, authorized YAQOOB to provide care up to 14 children at the facility on Rathmoor Street.

**Counts 1-3**

**(Wire Fraud)**

**[18 U.S.C. § 1343]**

10. Paragraphs 1 to 9 are re-alleged and incorporated herein.

11. Beginning on a date unknown, but no later than August 12, 2021, and continuing up to and including on or about August 2, 2026, within the Southern District of California and elsewhere, defendant CEZAR YAQOOB knowingly and with the intent to defraud, devised, participated in, and executed a material scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and intentional concealment and omission of material facts.

**Manner and Means**

12. The fraudulent scheme and artifice to defraud was operated and was carried out, and to be carried out, in substance, as follows:

///

13. Defendant YAQOOB applied for and received from CDSS a license to operate a childcare facility in the Southern District of California.

14. After obtaining a license from CDSS, defendant YAQOOB registered with CDA and YMCA as the childcare provider for families that received subsidized childcare services.

15. Defendant YAQOOB, using the third-party software, accessed and printed blank monthly attendance records for each child YAQOOB was registered with CDA or YMCA as the childcare provider.

16. Defendant YAQOOB submitted to CDA and YMCA completed attendance records for each child YAQOOB had purportedly provided childcare to in the preceding month, and certified under penalty of perjury the accuracy of the dates and times he provided care to a child.

17. Defendant YAQOOB, to obtain payment from CDA and YMCA, knowingly submitted and caused to be submitted attendance records containing materially false and fraudulent statements, specifically the dates and times he purportedly provided childcare to the children identified in the attendance records, and his false certification under penalty of perjury that that the information in the attendance records was true and correct.

18. Defendant YAQOOB submitted his attendance records to CDA and YMCA, both of which processed the records through the same third-party software and thereby caused interstate wire communications, specifically the transmittal of the attendance records to the third-party software company's server in Oregon.

19. CDA and YMCA relied on defendant YAQOOB's false and fraudulent statements in the attendance records and remitted payment to YAQOOB based on his materially false and fraudulent representations, promises, and intentional concealment and omission of material facts. In doing

so, YAQOOB obtained funds from the United States Government that were intended to pay for childcare actually provided to low-income families.

**Use of the Wires**

20. On or about the dates set forth below, within the Southern District of California and elsewhere, defendant CEZAR YAQOOB, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, knowingly transmitted and caused to be transmitted by wire communications in interstate and foreign commerce, certain writings, signs, signals, and sounds as more particularly described below:

| Count | Approximate Date | Interstate Wire |
|---|---|---|
| **1** | August 2, 2026 | Electronic submission of July 2026 Attendance Record for Child 1 |
| **2** | August 2, 2026 | Electronic submission of July 2026 Attendance Record for Child 2 |
| **3** | August 2, 2026 | Electronic submission of July 2026 Attendance Record for Child 3 |

All in violation of Title 18, United States Code, Section 1343.

**FORFEITURE ALLEGATIONS**

The allegations set forth in Counts 1 through 3 of this Complaint are realleged and incorporated as a part hereof for purposes of seeking forfeiture of property pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(2), and 982(b), and Title 28, United States Code, Section 2461(c).

Upon conviction of one and more of the offenses in violation of Title 18, United States Code, Section 1343 set forth in Counts 1 through 3 of this Complaint, defendant CEZAR YAQOOB shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections

981(a)(1)(C) and 982(a)(2)(A), and Title 28, United States Code, Section 2461(c) and Title 21, United States Code, Section 853, all property, real and personal, which constitutes or is derived from proceeds of the offenses and all property traceable to such property, and all facilitating property.

If any of the forfeitable property, as a result of any act or omission of the Defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the Defendant up to the value of the forfeitable property.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(B), and Title 28, United States Code, Section 2461(c).

The complainant states that this complaint is based on the attached probable cause statement, which is incorporated herein by reference.

______________________________
Rae Ocampo, Special Agent
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 4th day of September 2026.

______________________________
HON. DAVID D. LESHNER
United States Magistrate Judge

STATEMENT OF PROBABLE CAUSE

**A. Training and Experience**

1. I have been employed as a Special Agent with Homeland Security Investigations ("HSI") since December 2022. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia. I am currently assigned to the HSI Office of the Special Agent in Charge, in San Diego, California, and specifically to the Costa Pacifico Money Laundering Group, which is focused on financial investigations.

2. All dates, times, and amounts herein are approximate.

**B. Background of Federally Subsidized Childcare Programs**

3. The United States Department of Health & Human Services provides federal funding to states to help low-income families pay for childcare expenses.

4. In California, there are four programs that provide subsidies to childcare providers servicing income-eligible families: CalWORKs Stage 1, CalWORKs Stage 2 Alternative Payment ("C2AP"), CalWORKs Stage 3 Alternative Payment ("C3AP"), and California Alternative Payment Program ("CAPP"). In San Diego, the County of San Diego administers "Stage 1" subsidies, and two community organizations, Child Development Associates ("CDA") and the Young Men's Christian Association ("YMCA"), administer subsidies through the C2AP, C3AP, and CAPP.

5. Generally, if CDA or YMCA determines that a family is eligible to receive subsidized childcare services and their selected childcare provider registers with CDA or YMCA, has an active license to provide care at an approved facility from the State of California Department of Social Services ("CDSS"), and submits monthly attendance records documenting the childcare they provided, CDA and YMCA pay subsidies

///

directly to the childcare provider, via check or direct deposit, for providing childcare to registered income-eligible families.

6. The monthly attendance record forms have "self-certification" and signature sections for both the childcare provider and the parent, both of which begin "I declare under penalty of perjury that the information provided on this attendance record is true and correct[.]" Without a completed and signed attendance record, CDA and YMCA do not issue payment to registered childcare providers.

7. CDA and YMCA both use a third-party software company to transmit blank monthly attendance records forms to childcare providers. The attendance record forms include the childcare provider's name, the child's name, the parent's name, and a table for entering the child's "Time In" and "Time Out" on each day of the month. A childcare provider can submit completed attendance record forms to CDA and YMCA in-person, via mail, or through a software application; all submissions result in a copy of the completed attendance record being transmitted to the third-party software company's servers in Oregon.

8. California regulations state in part: "The licensee shall be present in the home and shall ensure that children in care are supervised at all times. When circumstances require the licensee to be temporarily absent from the home, the licensee shall arrange for a substitute adult to care for and supervise the children during his/her absence. Temporary absences shall not exceed 20 percent of the hours that the facility is providing care per day." Cal. Code Regs. Tit. 22, § 102417(a).

**C. Investigation Background**

9. Since February 2026, Homeland Security Investigations ("HSI") and IRS-CI have been investigating a scheme in which individuals in the Southern District of California receive licenses to operate childcare

facilities, register as childcare providers to families approved for subsidized childcare, and routinely submit materially false and fraudulent monthly attendance records to obtain subsidy payments. The attendance records are false and fraudulent in that they claim the individual provided care to children on dates and times that no actual childcare could have been provided, either because there were no children at the facility or the licensed provider was not at the facility--and in some instances was not even in the United States at the time of the purported childcare. CDA and YMCA rely on the accuracy of the attendance records when remitting payment to providers for the childcare they purportedly provided to low-income families.

10. Through the investigation, agents identified Defendant CEZAR YAQOOB as an individual who purported to provide childcare services in El Cajon, California, which is in the Southern District of California, since at least 2021.

11. YAQOOB, a resident of the Southern District of California, operated "YAQOOB, CEZAR FAMILY CHILD CARE" at an address on Rathmoor Street in El Cajon, California, within the Southern District of California. The license, effective August 12, 2021, authorized YAQOOB to provide care up to 14 children at the facility on Rathmoor Street.

12. Since 2020, YAQOOB has received payments from CDA and YMCA that totaled over $790,000.

13. Based on my training and experience and knowledge of this investigation, I believe YAQOOB is obtaining these funds by routinely submitting materially false and fraudulent attendance record forms that falsely claim he provided childcare to multiple children on dates when no children were at the facility and, in some instances, when YAQOOB himself was not even at the facility.

**D. YAQOOB Falsely Certified Attendance Records**

14. Based on my investigation, I believe YAQOOB falsely certified attendance records for July 2026.

15. On or about August 2, 2026, YAQOOB submitted eight attendance records to YMCA and two attendance records to CDA and claimed under penalty of perjury to have provided childcare to 10 children, including Child 1, Child 2, and Child 3, in July 2026. Combining the attendance records submitted to CDA and YMCA, YAQOOB claimed to have provided childcare every day of July 2026. Notably, YAQOOB's attendance records claimed that he cared for eight children including a one-year-old baby, Child 1, Child 2, and Child 3, during the weekdays in July 2026, with care purportedly provided from as early as 8:35 a.m. to as late as 10:25 p.m. YAQOOB's attendance records also claimed that he cared for five children every weekend day of July 2026, including a one-year-old baby, with care purportedly provided from as early as 8:06 a.m. to as late as 9:30 p.m.

16. Each of the attendance records YAQOOB submitted for July 2026 listed "CEZAR YAQOOB" or "YAQOOB, CEZAR" as the provider and contained a dated signature under the "Provider Self-Certification" stating in part, "I declare under penalty of perjury that the information provided on this attendance record is true and correct[.]" The only active childcare license YAQOOB had during July 2006 was for "YAQOOB, CEZAR FAMILY CHILD CARE" on Rathmoor Street in El Cajon.

17. YAQOOB submitted the attendance records for July 2026 to CDA and YMCA in the Southern District of California, and he caused the following interstate wires when the attendance records were transmitted to the third-party software company's server in Oregon:

///

| Approximate Date | Interstate Wire |
|---|---|
| August 2, 2026 | Electronic submission of July 2026 Attendance Record for Child 1 |
| August 2, 2026 | Electronic submission of July 2026 Attendance Record for Child 2 |
| August 2, 2026 | Electronic submission of July 2026 Attendance Record for Child 3 |

E. **Surveillance of YAQOOB's Facility**

18. I conducted stationary surveillance of YAQOOB's licensed facility on Rathmoor Street on June 23, 2026, from 12:20 p.m. to 2:00 p.m. Notably, I did not observe any children entering or exiting the facility during the surveillance. At 1:46 p.m. I observed YAQOOB exit the facility and drive away in a white Lexus sedan. I did not observe YAQOOB returning to the facility before ending the surveillance at approximately 2:00 p.m. In attendance records he submitted for June 2026, YAQOOB claimed to provide care for five children on June 23, 2026, including Child 1, Child 2, and Child 3 from approximately 8:36 a.m. to 5:52 p.m. Based on the surveillance, including that YAQOOB left the facility at a time he was purportedly providing childcare, I believe YAQOOB submitted materially false and fraudulent attendance forms claiming childcare YAQOOB did not actually provide.

19. The investigation team began stationary remote surveillance of YAQOOB's licensed facility on Rathmoor Street from July 2, 2026, to August 6, 2026.[1] Of the 34 complete days captured in the surveillance recordings (July 3 through August 5), the investigative team did not

[1] The surveillance recordings do not include every minute of the surveillance period; rather, the stationary remote surveillance recorded only for a duration after detecting motion in the frame, including people or moving vehicles on the sidewalk, street, or driveway adjacent to the facility.

observe more than two children entering YAQOOB's facility on any given day. On every day of the surveillance period, YAQOOB claimed in the attendance records to have provided care to more children than the number of children observed entering his facility in the surveillance recordings. For example, YAQOOB claimed in the attendance records to have provided childcare to seven children on July 9, 2026, including Child 1, Child 2, and Child 3, but no children were observed entering the facility that day in the surveillance recordings.

20. The table below summarizes the number of children YAQOOB claimed to have provided care to in the attendance records that he submitted to CDA and YMCA, and the number of children observed in the surveillance recordings:

| Date [2026] | Children YAQOOB Claimed on Attendance Records | Children Observed at YAQOOB's Facility in Surveillance Recordings |
|---|---|---|
| July 2 | 7 | 0 |
| July 3 | 7 | 0 |
| July 4 | 5 | 0 |
| July 5 | 5 | 0 |
| July 6 | 7 | 0 |
| July 7 | 8 | 0 |
| July 8 | 8 | 0 |
| July 9 | 7 | 0 |
| July 10 | 7 | 0 |
| July 11 | 7 | 1 |
| July 12 | 5 | 0 |
| July 13 | 7 | 0 |
| July 14 | 8 | 0 |
| July 15 | 7 | 1 |
| July 16 | 7 | 0 |
| July 17 | 7 | 0 |
| July 18 | 5 | 1 |
| July 19 | 5 | 0 |
| July 20 | 7 | 0 |
| July 21 | 8 | 0 |
| July 22 | 8 | 1 |
| July 23 | 7 | 0 |

| Date [2026] | Children YAQOOB Claimed on Attendance Records | Children Observed at YAQOOB's Facility in Surveillance Recordings |
|---|---|---|
| July 24 | 7 | 0 |
| July 25 | 5 | 2 |
| July 26 | 5 | 0 |
| July 27 | 7 | 0 |
| July 28 | 8 | 0 |
| July 29 | 8 | 0 |
| July 30 | 7 | 0 |
| July 31 | 7 | 0 |

21. Despite YAQOOB's attendance records claiming he provided childcare to at least five children every day of July 2026, the 30 days of surveillance recordings in July 2026 showed no more than two children observed entering or leaving the facility on any given day. Additionally, the recordings show YAQOOB exiting the facility and driving away in a vehicle at times he later claimed to provide childcare. For example:

a. Surveillance recordings show YAQOOB exiting the facility and driving away in a vehicle on July 6, 2026, at 10:58 a.m., returning at approximately 12:33 p.m., leaving again at 2:39 p.m., and returning at 4:52 p.m., and leaving yet again at 8:15 p.m. Attendance records YAQOOB submitted claimed he provided childcare to a total of seven children, including a one-year-old baby, on July 6, 2026, at various times between approximately 1:00 p.m. to approximately 9:30 p.m. But the recordings show YAQOOB was not even at the facility for over 3 of the 8.5 hours that he claimed to provide care on July 6, 2026.

b. Similarly, surveillance recordings show YAQOOB exiting the facility and driving away in a vehicle on

July 21, 2026, at 2:23 p.m., returning at approximately 3:43 p.m., leaving again at 4:11 p.m., returning at 5:33 p.m.; leaving yet again at 8:10 p.m. Attendance records YAQOOB submitted claimed he provided childcare to a total of eight children, with care purportedly provided between approximately 8:30 a.m. to approximately 8:00 p.m. But the recordings show YAQOOB was not even at the facility for nearly 3 of the 11.5 hours he claimed to provide care on July 21, 2026.

22. Of course, in addition to showing YAQOOB's intermittent absences from the facility at times he claimed to provide childcare, the surveillance recordings did not show any children entering or exiting the facility on either July 6, 2026 or July 21, 2026.

23. Based on the above, I believe the July 2026 attendance records YAQOOB submitted were materially false, fraudulent, and fabricated to obtain payment for childcare that YAQOOB did not actually provide.

**F. CDSS Visits to Defendant YAQOOB's Facility**

24. During my investigation, I discovered that certain CDSS reports are available through open-source research. According to publicly available reports, a CDSS licensing program analyst conducted unannounced visits to YAQOOBS's facility on Rathmoor Street on August 17, 2023, and on March 1, 2024.

25. According to the CDSS facility evaluation report summarizing the unannounced visit on August 17, 2023, the CDSS analyst arrived at 2:50 p.m., "toured" the facility, and completed the visit at 3:50 p.m. The report states that "During this visit, there were children in care." Unlike other CDSS facility evaluation reports I have reviewed, this report does not specify the number of children present during the

inspection, their approximate ages, or whether they were related to the licensed provider or children receiving daycare from the provider.[2]

26. According to the CDSS facility evaluation report summarizing the unannounced inspection of YAQOOB's facility on March 1, 2024, the inspection started at 8:30 a.m. and ended at 12:00 p.m. According to the report, "[t]here were no children in care initially, at 10:05am 2 children arrived during inspection," and the report states "CENSUS: 2[.]" Finally, the report stated the CDSS analyst met with YAQOOB, and his "mother and helper" was also in the facility.

**G. PAYMENTS TO DEFENDANT YAQOOB**

27. After submitting the attendance records for childcare purportedly provided in July 2026 to YMCA, including the attendance records for Child 1, Child 2, and Child 3, YAQOOB was issued payment from YMCA that totaled to $9,507.83 on August 25, 2026.

28. After submitting the attendance records for childcare purportedly provided in July 2026 to CDA, YAQOOB was issued payment from CDA that totaled to $2,223.32 on August 21, 2026.

**H. Conclusion**

29. Based on my training and experience, I believe YAQOOB executed a wire fraud scheme a date unknown but no later than August 12, 2021, and continuing through at least August 2, 2026, in violation of 18 U.S.C. § 1343.

---

[2] The report states "CENSUS: 0." My understanding from other CDSS reports I have reviewed is that the "CENSUS" figure usually reports the total number of children present and receiving childcare services during the inspection.